**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NELSON ANTONIO AVALOS-ORELLANA,<br><br>Petitioner,<br><br>vs.<br><br>MARKWAYNE MULLIN, *et al.*,<br><br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 3:26-cv-00940<br>Judge Stephanie L. Haines |

**MEMORANDUM OPINION**

Nelson Antonio Avalos-Orellana ("Petitioner") is an immigration detainee who submitted a Petition for Writ of Habeas Corpus ("Petition") on May 20, 2026. ECF No. 1. As now framed by the parties' submissions, Petitioner challenges his lengthy immigration detention and seeks an order requiring a bond hearing before an immigration judge at which the Government bears the burden to demonstrate that he should remain detained. For the reasons that follow, the Petition will be **GRANTED**.

## I. BACKGROUND

Petitioner is a native and citizen of El Salvador. ECF No. 1-3, p. 2. He entered the United States without admission or parole sometime between 2010 and 2011 by crossing the United States/Mexico border. ECF No. 6-1, p. 2. On Dec. 12, 2013, Petitioner filed a petition for I-918A U Nonimmigrant Status. ECF No. 6-2, p. 1. On August 29, 2015, he was arrested for Driving Under the Influence, later pled guilty, and served time for the offense. ECF No. 6-1, p. 3. On Jan. 17, 2017, Petitioner was approved and admitted for Class U3 status with authorization to remain in the United States for a temporary period not to exceed Jan. 16, 2021. ECF No. 6-2, p. 1. He was

arrested again for Driving Under the Influence, later pled guilty, and served time for the offense.[1] ECF No. 6-1, p. 3. Petitioner remained in the United States beyond January 16, 2021, without authorization from the Government. ECF No. 6-2, p. 1.

On July 19, 2025, Petitioner was charged with driving with a suspended/revoked license and for having no rear vehicle lights. ECF No. 6-4. Petitioner was subsequently detained by Immigration and Customs Enforcement ("ICE") on August 29, 2025, and is currently held at the Moshannon Valley Processing Center ("MVPC"). ECF No. 6-5, p. 1. On December 9, 2025, Petitioner had a bond hearing, where the immigration judge ("IJ") denied bond and found he was a danger to the community and alternatively, a flight risk. ECF No. 6-3, p. 2. On February 4, 2026, Petitioner was ordered removed from the United States. ECF No. 6-7. On March 6, 2026, Petitioner appealed that decision, which is still pending with the Board of Immigration Appeals ("BIA"). ECF Nos. 6-8; 6-9. On May 20, 2026, Petitioner filed a Petition pursuant to 28 U.S.C. § 2241. ECF No. 1. The Government filed a response in opposition. ECF No. 6. Petitioner then filed a reply. ECF No. 7.

## II. DISCUSSION

Petitioner argues that his continued detention has become constitutionally unreasonable. For relief, he initially sought immediate release but later narrowed his request, in a supplemental reply, to an order requiring a bond hearing before an IJ at which the Government bears the burden to demonstrate that he should remain detained. Respondents oppose and argue that Petitioner has failed to exhaust his administrative remedies and has already received a constitutionally adequate bond hearing.

[1] Petitioner's I-213 form contains an apparent chronological error in that it indicates his guilty plea took place eleven months prior to his arrest. Because the precise conviction date is immaterial to the present Petition, the Court need not resolve that discrepancy.

**A. Exhaustion of administrative remedies does not bar review.**

Respondents argue that the Petition should be denied for failure to exhaust administrative remedies. Although Section 2241 does not include an express statutory exhaustion requirement, the Third Circuit generally requires immigration detainees to exhaust available administrative remedies before seeking habeas relief. *See Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). That requirement, however, is prudential rather than jurisdictional and may be excused where exhaustion would be futile. *See Duvall v. Elwood*, 336 F.3d 228, 234 (3d Cir. 2003) ("[W]here exhaustion is not clearly mandated by statute, a futility exception exists."); *Chajchic v. Rowley*, No. 1:17-CV-457, 2017 WL 4401895, at *4 (M.D. Pa. July 25, 2017), *report and recommendation adopted*, 2017 WL 4387062 (M.D. Pa. Oct. 3, 2017).

Here, the Court will not deny the Petition on exhaustion grounds. Petitioner's claims do not include his order of removal or whether the IJ incorrectly weighed the evidence at his prior bond hearing. Rather, he argues his continued detention has become constitutionally unreasonable and that his first bond hearing was constitutionally inadequate because the IJ placed the burden of proof on him rather than on the Government and did not require the Government to prove the asserted danger or flight risk by clear and convincing evidence. Petitioner further argues that due process now requires a new hearing at which the Government bears the burden of justifying continued detention.

Requiring further administrative review would not permit the agency to resolve the claim presented here because it would not resolve Petitioner's constitutional challenge to the burden-allocation framework itself. Likewise, a subsequent custody redetermination request under 8 C.F.R. § 1003.19(e) requires a showing of materially changed circumstances and does not address whether the Due Process Clause requires the Government to bear the burden after detention

becomes prolonged. These are constitutional claims for habeas relief. Under these circumstances, requiring exhaustion would not serve the purposes of the prudential exhaustion doctrine, and the Court will reach the merits of Petitioner's constitutional claims.

**B. Petitioner is entitled to a new bond hearing.**

It is undisputed that Petitioner received a bond hearing on December 9, 2025, and that bond was denied because "[Petitioner is a] [d]anger to the community and alternatively, a flight risk." ECF No. 6-3, p. 2. Petitioner, however, challenges the constitutional adequacy of this hearing because the burden was on him to prove he was neither a danger to the community nor a flight risk. This Court previously adopted a report and recommendation concluding that the Third Circuit has not squarely resolved whether the Due Process Clause permits placing the burden of proof on the detainee at an initial Section 1226(a) bond hearing. *Josiah v. Oddo*, No. 3:25-cv-350 (W.D. Pa. Dec. 16, 2025), ECF No. 9, pp. 3-4, *report and recommendation adopted*, 2026 WL 179311 (W.D. Pa. Jan. 22, 2026). The Court need not resolve that question here because even assuming Petitioner's December 2025 hearing was constitutionally adequate when conducted, the question now is, considering both the duration of his detention and the circumstances of the process afforded to date, whether continued detention without the Government ever bearing the burden to justify detention has become constitutionally unreasonable.

This Court has previously concluded that Third Circuit precedent does not categorically foreclose subsequent bond hearings in prolonged detention cases. *Fadel v. Warden*, No. 3:26-cv-00625, 2026 WL 1649901, at *2-3 (W.D. Pa. June 8, 2026). In *Fadel*, the Court applied the *German Santos* factors[2] and concluded that continued detention had become unreasonable,

---

[2] Although *German Santos* involved detention under Section 1226(c), other courts have applied its due process analysis in other prolonged detention contexts. *See, e.g.*, *Maksaddzhon A. v. Pittman*, No. 25-13734, 2025 WL 3648710, at *2 (D.N.J. Dec. 17, 2025) (collecting cases applying *German Santos* to prolonged detention under Section 1225(b)); *A.J.R. v. Rokosky*, No. 25-17279, 2026 WL 592136, at *2-3 (D.N.J. Mar. 3, 2026) (applying *German Santos*

requiring a subsequent bond hearing at which the Government would bear the burden. *Id.* at *2-5. Here, Petitioner's claim does not rest solely on the duration of detention, which now stands at nearly one year, but also that the only bond hearing he received placed the burden on him to establish that detention was unwarranted. Although the Court does not hold that the December hearing was constitutionally deficient when conducted, the Government has never been required to demonstrate that Petitioner's continued detention remains necessary. The Court therefore considers that feature of the process afforded to date together with the duration and likely continuation of his detention.

Under these circumstances, the Court finds the *German Santos* framework useful in determining whether Petitioner's continued detention has become constitutionally unreasonable. That inquiry is "highly fact-specific . . . ." *German Santos v. Warden Pike Cty. Corr. Facility*, 965 F.3d 203, 210 (3d Cir. 2020). The Court addresses the relevant factors, which include: (1) the duration of detention; (2) the likelihood of continued detention; (3) the reasons for any delay; and (4) the conditions of confinement. *Id.* at 211.

**1. Duration**

The first and "most important" factor is the duration of detention. *Id.* Although the Third Circuit declined to adopt a bright-line rule for when immigration detention becomes unreasonable, six months has repeatedly served as a meaningful benchmark in immigration detention cases. In *Demore v. Kim*, the Supreme Court upheld detention of approximately six months as only "somewhat longer than average." 538 U.S. 510, 530-31 (2003). And in *Zadvydas*, although addressing detention under Section 1231 after a final order of removal, the Supreme Court treated six months as the period presumptively reasonable before continued detention required further

---

factors where petitioner had previously received a Section 1226(a) bond hearing).

justification. 533 U.S. at 701. The Third Circuit has also recognized that detention lasting between six months and one year may become constitutionally suspect. *See Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469, 478 (3d Cir. Apr. 9, 2015). While these cases do not establish a fixed six-month rule here, they confirm that Petitioner's approximately one-year detention is sufficiently lengthy to weigh in favor of relief. Accordingly, the Court finds the duration of Petitioner's detention is substantial and weighs strongly in favor of granting relief.

**2. Likelihood of continued duration**

The second factor is whether the detention is likely to continue. *German Santos*, 965 F.3d at 211. When removal proceedings "are unlikely to end soon," the prospect of additional confinement weighs toward a finding of unreasonableness. *Id.* This factor also favors Petitioner because his removal proceedings have not ended. The immigration court ordered his removal, but Petitioner appealed that decision. As of this writing, that appeal remained pending and resolution may take additional months. If Petitioner's appeal is remanded, proceedings may continue still longer. The relevant point for this factor is not whether Petitioner will ultimately prevail but rather that there is no imminent end date to detention. Continued detention is therefore likely to last for an additional, indeterminate period.

**3. Reasons for delay**

The third factor concerns the reasons for delay, including whether either party has caused unnecessary delay through continuances, careless errors, or bad-faith conduct. *German Santos*, 965 F.3d at 211. Courts should not hold a detainee's good-faith pursuit of immigration relief against him, even if his applications or appeals prolong the proceedings, because doing so would effectively punish him for pursuing available legal remedies. *Id.* At the same time, Government delay does not require a finding of bad faith to become relevant because detention may become

unreasonable even where the Government has handled the proceedings reasonably. *Id.* In *German Santos* itself, the Third Circuit treated this factor as neutral where neither party bore meaningful responsibility for the delay. *Id.* at 212.

Here, this factor is neutral. The record does not show that Petitioner has delayed these proceedings in bad faith. He was ordered removed and appealed the IJ's removal order. Those are lawful steps in the removal process. The Court will not penalize Petitioner for pursuing available legal remedies. Nor have Respondents been shown to have caused unnecessary delay through carelessness or bad faith. The Court finds the delay appears attributable to the ordinary course of removal and appellate proceedings.

**4. Conditions of confinement**

The fourth factor is whether the conditions of confinement are meaningfully different from criminal punishment. *German Santos*, 965 F.3d at 211. The parties have not submitted evidence concerning Petitioner's specific conditions of confinement. It is undisputed, however, that Petitioner is detained at the Moshannon Valley Processing Center ("MVPC"). Further, a court in this District previously recognized that conditions at MVPC may resemble prison-like confinement. *See, e.g.*, *C.B. v. Oddo*, No. 3:25-cv-00263, 2025 WL 2977870, at *7 (W.D. Pa. Oct. 22, 2025). And, as with any civil immigration detention, Petitioner is not free to leave. In the absence of a more developed record, this factor weighs at least somewhat in Petitioner's favor.

**5. Balance of factors**

Considering the *German Santos* factors together, the Court concludes that Petitioner's continued detention has become constitutionally unreasonable. Petitioner has been detained for nearly one year, his merits appeal remains pending without a clear timeline for resolution, neither party bears meaningful responsibility for the resulting delay, and Petitioner remains confined at

MVPC under conditions that, at least in practical effect, resemble penal detention.

The Court does not hold that every Section 1226(a) detainee who previously received a bond hearing is automatically entitled to a subsequent hearing once detention reaches a particular length. Nor does the Court review the discretionary merits of the IJ's prior bond denials. Rather, under the specific circumstances presented here, the process afforded to date is no longer sufficient. Petitioner is therefore entitled to a new bond hearing at which the Government must prove, by clear and convincing evidence, that continued detention is necessary because Petitioner poses a danger to the community or a risk of flight.

## III. CONCLUSION

For the reasons set forth herein, the Petition will be **GRANTED**. An appropriate Order follows.

## ORDER

**AND NOW**, this 26th day of August, 2026, for the reasons stated in the Memorandum Opinion, it is hereby **ORDERED** that:

1. The Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED**.
2. As relief for the constitutional violation identified above, Respondents shall provide Petitioner with a new individualized bond hearing before an immigration judge. At that hearing, the Government shall bear the burden of proving, by clear and convincing evidence, that Petitioner's continued detention is necessary because Petitioner poses a danger to the community or a risk of flight or both.
3. The bond hearing shall include an individualized determination of whether continued detention remains justified. The immigration judge shall state the reasons for the custody determination orally on the record or in writing. If bond is denied, the immigration judge

shall identify the principal facts and evidence relied upon in determining that Petitioner poses a danger to the community, a flight risk, or both. Nothing in this Order requires the immigration judge to reach any particular custody determination.

4. The Government shall arrange for an individualized bond hearing to be conducted by an immigration judge by Friday, September 18, 2026.

5. If Petitioner is not provided with a bond hearing by Friday, September 18, 2026, or if the immigration judge declines jurisdiction or denies eligibility for a bond hearing, Respondents shall immediately release Petitioner from custody.

6. If Petitioner is granted bond and the Government appeals the immigration judge's decision, then, upon notification to this Court, the writ shall issue and Petitioner shall be automatically released from custody.

7. With no further action required by the Court at this time, the Clerk of Court shall mark this matter closed.

Stephanie L. Haines
United States District Judge